**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 26-00479-EG |
| Brittany Browder Turner, | Chapter 13 |
| Debtor(s). | **ORDER DENYING EMERGENCY MOTION FOR STAY PENDING APPEAL** |

**THIS MATTER** is before the Court on the Emergency Motion for Stay Pending Appeal ("Stay Motion") filed by Brittany Browder Turner ("Debtor").[1] Together with the Stay Motion, Debtor filed a Notice of Appeal with this Court on August 14, 2026 (ECF No. 61), appealing the following orders of this Court (the "Appealed Orders"):

1. The Order Dismissing Case entered June 18, 2026 (ECF No. 21);
2. The Order Denying Emergency Motion to Vacate Dismissal and Reinstate Case ("Order Denying Motion to Vacate"), entered July 28, 2026 (ECF No. 55); and
3. The Order Denying Emergency Supplemental Motion for Sanctions and for Enforcement of Judicial Abeyance Pending Reinstatement, entered July 30, 2026 (ECF No. 56).

Debtor seeks a stay while she pursues her appeal to the United States District Court for the District of South Carolina, pursuant to Federal Rules of Bankruptcy Procedure 8007(a)(1)(A) and 8013. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(a)(2)(A) and (G). Even though the appeal is pending before the District Court, Rule 8007(a)(1) allows the bankruptcy court to decide the motion for stay pending appeal.[2]

[1] ECF No. 65, filed Aug. 14, 2026.

[2] Debtor may also request a stay pending appeal from the District Court pursuant to Rule 8007(b), but the pleadings indicate that Debtor is seeking such relief from the Bankruptcy Court at this time. The Bankruptcy Court received the Notice of Appeal on August 14, 2026—three days after the deadline prescribed by the applicable rules. To justify the untimeliness of the appeal, Debtor attached to the Notice of Appeal a document titled "Notice of System Inaccessibility

## FACTUAL BACKGROUND

Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on February 2, 2026 (the "Petition"), with the assistance of Jason T. Moss of Moss & Associates, Attorneys P.A. ("Debtor's Counsel").[3] No schedules or statements were filed with the Petition. On February 13, 2026, Debtor's Counsel filed a motion for an extension of time to file schedules and other required documents on behalf of Debtor.[4] The Court granted an extension of the deadline until March 2, 2026.[5] Debtor did not file her schedules and statements until after the deadline had passed—on March 23, 2026.[6] Debtor also filed her chapter 13 plan on March 23, 2026, proposing to make monthly payments to the Chapter 13 Trustee of $2,529.00, including monthly conduit mortgage payments to her mortgage creditor, Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"). While her bankruptcy case was pending, Debtor made three payments to the Trustee: $499.00 in April 2026, $998.00 in May 2026 and $499.00 in June of 2026.

Debtor's § 341 meeting of creditors was held on April 20, 2026. At the § 341 meeting, the Trustee informed Debtor and her counsel that amended schedules and an amended plan were needed. The confirmation hearing was continued to May 26, 2026, at the request of the Trustee. Prior to the confirmation hearing, the Trustee requested a CII Order Denying Confirmation ("CII Order"), requiring Debtor to file an amended plan within ten (10) days and further providing that

---

and Timely Early Service to Clerk" stating that the appeal was erroneously filed in the Eastern District of North Carolina on August 11, 2026 and when she realized the mistake, she attempted to file it with the Court on August 13, 2026. Consistent with Fed. R. Bankr. P. 8002, the Clerk's Office has transferred the Notice of Appeal and all related documents to the District Court. This Court does not believe that it has the authority or jurisdiction to decide the timeliness of the appeal. Fed. R. Bankr. 8002(a)(4) (noting that if a notice of appeal is mistakenly filed in a district court, BAP, or court of appeals, that court's clerk must note on it the date when it was received and sent it to the bankruptcy clerk; here, it was sent to a bankruptcy court for a different district and it was not filed with this Court until days later).

[3] ECF No. 1.

[4] ECF No. 7. The motion stated "[a]t the present time the debtor(s) has not been able to provide all necessary information to complete the remaining required Schedules, Statements and Chapter 13 Plan."

[5] ECF No. 8, entered Feb. 18, 2026.

[6] Debtor signed her schedules and statements and chapter 13 plan on March 22, 2026. ECF No. 42.

failure to comply could result in the dismissal of the bankruptcy case without further notice or hearing.[7] The CII Order was entered on May 21, 2026.

Following the entry of the CII Order, Debtor's Counsel sent two versions of an amended plan to Debtor for her signature, which she did not sign. Debtor's Counsel attempted to contact Debtor on multiple occasions to obtain her signature on an amended plan, but she did not respond. No amended plan was filed as required by the CII Order. On June 12, 2026—twenty-two days after the entry of the CII Order—the Trustee filed a Motion to Dismiss Case for Non-Compliance Due to Debtor's Failure to Comply with CII Order ("Motion to Dismiss"). The Order Dismissing Case was entered on June 18, 2026, and dismissed the case without a bar to refiling.[8]

Debtor filed an Emergency Motion to Vacate Dismissal Order, Reinstate Case, and Schedule Status Conference ("Emergency Motion to Vacate") on June 22, 2026. Despite Debtor's Counsel still being her attorney of record, she filed the motion without his assistance. On June 28, 2026, Debtor's 2012 Chevrolet Tahoe was repossessed by Exeter Finance, LLC.

In the Emergency Motion to Vacate, Debtor made various assertions that her counsel's failure to take certain actions resulted in the dismissal of her case. The Court entered an order[9] (1) setting a hearing on the Emergency Motion to Vacate for July 14, 2026 and setting a response deadline of July 7, 2026 and (2) directing Debtor's Counsel to appear at the hearing. Debtor's Counsel was further ordered to file proof of Debtor's signature on the chapter 13 plan and schedules filed in the case. On July 7, 2026, Debtor's counsel filed a response,[10] which was later

[7] ECF No. 16.
[8] ECF No. 21.
[9] ECF No. 27, filed June 23, 2026.
[10] ECF No. 33.

supplemented with an exhibit[11] reflecting copies of Debtor's schedules, statements, and chapter 13 plan bearing her electronic signature.

On July 8, 2026, Debtor filed an Emergency Supplemental Motion for Sanctions and for Enforcement of Judicial Abeyance Pending Reinstatement, seeking relief against Exeter Finance LLC, DF Properties & Recovery, Carolina Fleet Towing & Recovery, Transportation Alliance Bank c/o NetCredit and Account Services USA on behalf of Farm Bureau Bank, and Debtor's Counsel for damages arising from the dismissal of the case and the subsequent repossession of her vehicle (the "Supplemental Motion").[12]

The Court held an evidentiary hearing on the Motion on July 14, 2026, which was attended by Debtor, Debtor's Counsel, the Chapter 13 Trustee ("Trustee"), and the Trustee's counsel. On July 28, 2026, the Court entered the Order Denying Motion to Vacate, finding that there were no grounds for relief from the Order Dismissing Case under Rules 59(e) or 60(b).[13] On July 30, 2026, the Court also denied the Supplemental Motion without hearing, because the relief sought was either moot due to the denial of the Emergency Motion to Vacate or did not appear to have a legal basis.[14]

## ANALYSIS

Pursuant to Fed. R. Bankr. P. 8007 (a), a party may seek a stay pending appeal by first filing a motion in the bankruptcy court either before or after the notice of appeal is filed. Rule 8007(e) provides that "[d]espite Rule 7062—but subject to the authority of the District Court,

[11] ECF No. 42, filed on July 13, 2026.
[12] ECF No. 37. The Court set a hearing on the Supplemental Motion for July 21, 2026, but later continued it to August 18, 2026, pending the Court issuing an order on the Emergency Motion to Vacate which it had taken under advisement following the hearing as its outcome could moot most if not all of the issues raised in the Supplemental Motion.
[13] ECF No. 55. The extensive factual findings and conclusions of law in the Order Denying Motion to Vacate are incorporated herein by reference.
[14] ECF No. 56.

BAP, or court of appeals—while the appeal is pending, the bankruptcy court may: (1) suspend or order the continuation of other proceedings in the case, or (2) issue any appropriate order to protect the rights of all parties in interest." Fed. R. Bankr. P. 8007(e). "The standard for determining stays pending appeal . . . requir[es] consideration of: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties' interest in the proceeding; and (4) where the public interest lies.'" *In re Addison*, 667 B.R. 94, 98 (Bankr. D.S.C. 2025) (quoting *In re Wellington*, 631 B.R. 833, 838-39 (Bankr. M.D.N.C. 2021)). As the party seeking a stay pending appeal, Debtor bears the burden of demonstrating that the elements are satisfied. *Id.* (citing cases). "A stay pending appeal is considered 'extraordinary relief' for which the moving party bears a 'heavy burden.'" *In re Wellington*, 631 B.R. at 838 (quoting *Covington v. North Carolina*, No. 1:15CV399, 2018 WL 604732, at *3 (M.D.N.C. Jan. 26, 2018)). The granting of a stay is discretionary even where all four elements are met. *Id.* (citing *In re Hopeman Bros.*, 667 B.R. 101, 105 (Bankr. E.D. Va. Jan. 24, 2025)).

*1. Likelihood of Success on the Merits*

Debtor contends that this Court committed multiple clear, reversible errors of law and fact. Debtor asserts that she instructed her counsel to amend her schedules to correct information regarding her residence and her counsel "flatly refused to file amendments" and attempted to force Debtor to "sign a conduit plan under penalty of perjury that would validate the false schedules."[15]

[15] From the outset, the Court notes that a chapter 13 plan is not included in the list of documents that must be verified or contain an unsworn declaration. Fed. R. Bankr. P. 1008 (providing that "[a] petition, list, schedule, statement, and any amendment must be verified or must contain an unsworn declaration under 28 U.S.C. § 1746"). The form chapter 13 plan requires the signature of the debtors but does not include any of the language, or substantially similar language, set forth in 28 U.S.C. § 1726 for an unsworn declaration under penalty of perjury. *See* 28 U.S.C. § 1746(2) (providing that the following form language may be used for an unsworn declaration under penalty of perjury executed within the United States: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).") Regardless, Debtor is correct that the Plan would have to be signed by her and she would have to consent to it being filed.

The Court thoroughly addressed these issues and made numerous findings in its Order Denying Motion to Vacate, which need not be revisited at length here.

*The "Perjury Trap" and the Denial of the Absolute Right to Amend*

The record is devoid of any evidence that Debtor's counsel refused to file amendments to her schedules; rather, the evidence indicated that Debtor was not responsive to communications from her counsel after the entry of the CII Order.[16] Debtor's case was dismissed due to her failure to comply with the CII Order by timely filing an amended plan, not due to her failure to file amended schedules.[17] As explained in the Court's Order Denying Motion to Vacate, the evidence before it indicated that Debtor's Counsel's firm had sent two versions of an amended plan to Debtor for her signature prior to the Trustee's Motion to Dismiss, which she elected not to sign or respond to her counsel.[18] Although Debtor claims that she did not sign the revised plans because she did not agree with Vanderbilt's claim and wanted Debtor's Counsel to object to it or file an adversary proceeding against the mortgage company, the Court concluded it was not going to second guess Debtor's Counsel's determination that there was no basis to object on the record before it and noted that "Debtor is not left without any available recourse—Debtor may seek relief from the Foreclosure Judgment in State Court to the extent that there are grounds to do so."[19]

---

[16] *See* Order Denying Motion to Vacate at 20:

> The Court has been presented with a classic "he said, she said" dispute –Debtor claims she gave him the required documents and information, and the staff at Moss Firm says she did not. The documents introduced into evidence show that Debtor was not responsive to Debtor's Counsel for much of her bankruptcy case. She failed to provide the information needed to file her bankruptcy schedules and statements for five weeks after the initial deadline for filing these documents and three weeks after the extended deadline Debtor's Counsel requested on her behalf. Although Debtor indicated that her emails were not being received by Moss Firm, she did not present any evidence demonstrating that she had in fact sent documents to Moss Firm prior to March 20, 2026, that were not received. The documents introduced by Debtor do not support her contention that she provided any documents prior to the deadline.

[17] *Id.* at 19.
[18] *Id.*
[19] *Id.* at 20-23.

*Clear Violation of SC LBR 9011-4 (Unauthorized Signature Filing)*

Debtor further argues that Debtor's Counsel drafted schedules and uploaded them on March 23, 2026, without Debtor's express documented permission, violating Rule 9011.[20] The record before the Court, however, reflects that Debtor provided electronic signature verification on the schedules and chapter 13 plan filed on March 23, 2026.[21] Moreover, Debtor admitted during the hearing on July 14, 2026, that she had signed the schedules and chapter 13 plan filed in her case.

*Rebuttal to Rooker-Feldman and the Extrinsic Fraud Exception*

Debtor also posits that this Court's finding that it lacks jurisdiction under the *Rooker-Feldman* doctrine to review the state court foreclosure judgment was a clear error of law. Without citation to any caselaw or statutory authority, Debtor contends that preclusion doctrines and the *Rooker-Feldman* doctrine do not apply where the underlying state court judgment was obtained through extrinsic fraud that "deprive[s] the court of subject-matter jurisdiction over the res." More specifically, Debtor asserts that:

> The state court foreclosure action was conducted on an un-docketed "shadow docket" characterized by an absolute lack of notice. Crawford & von Keller completely failed to serve the court-ordered Status Conference Memorandum, the Notice for the November Summary Judgment Hearing, and the final Order of Sale on the Debtor or the Trust, and instead engaged in deliberate "address swapping" on their Certificate of Service."[22]

---

[20] *See* Stay Motion, at 8 (asserting a violation of SC LBR 9011-4 because "Moss drafted schedules mashing the properties together and uploaded them on March 23, 2026, without the Debtor's express documented permission"). The assertion that Debtor's Counsel filed the documents without her "express documented permission" is contradictory to a later statement, whereby Debtor complains that the signature verification filed with the Court was not served on her and further states:

> While the Court used this to prove she signed schedules, it failed to see that Doc. 42 proved the Debtor's defense: the schedules signed on March 22 were defective from inception, and despite the Trustee's April 20 command to amend them, the Moss Firm did absolutely nothing to correct them.

Stay Motion, at 10. Nothing in this statement, however, suggests that she did not sign the documents prior to them being filed.

[21] ECF No. 42.

[22] Stay Motion, at 8

South Carolina courts have noted that "[e]xtrinsic fraud is 'fraud that induces a person not to present a case or deprives a person of the opportunity to be heard. Relief is granted for extrinsic fraud on the theory that because the fraud prevented a party from fully exhibiting and trying his case, there has never been a real contest before the court on the subject matter of the action.'" *Hutson v. Harper*, No. 2:24-CV-04357, 2025 WL 4232970, at *14 (D.S.C. July 23, 2025), *report and recommendation adopted*, No. 2:24-CV-4357, 2025 WL 4232967 (D.S.C. Aug. 14, 2025), (citing *Chewning v. Ford Motor Co.*, 579 S.E.2d 605, 610 (S.C. 2003)). The Fourth Circuit has not recognized an extrinsic fraud exception to the *Rooker-Feldman* doctrine. *Nelson v Levy Ctr., LLC*, No. 9:11-1184, 2016 WL 1276414 (D.S.C. Mar. 30, 2016).

Even if an extrinsic fraud exception was recognized by the Fourth Circuit, on the record before it, the Court finds no evidence of extrinsic fraud. Debtor alleges that the state court foreclosure action was conducted with "an absolute lack of notice." Although Debtor did not raise notice-related issues in her initial pleadings or at the hearing, she now contends that the lack of notice, together with an allegedly void mortgage chain, prevents the default foreclosure judgment from having preclusive effect. She also challenges the calculation of the foreclosure judgment. As noted in the Order Denying Motion to Vacate, the Court took judicial notice of the state court's docket and found that Debtor had raised the title issues in filings with that court but failed to appear at the hearing on a motion for summary judgment to argue her claims and dispute the calculation of the debt. The state court expressly found in the foreclosure judgment that Debtor had been notified of the time, date, and place of all hearings in the matter.[23] For these reasons, it does not

---

[23] The notice of hearing on the motion for summary judgment reflects that Debtor was served with notice by mail addressed to Debtor at 1041 Green Haven Drive, West Columbia, SC 29170, which is the address listed on Debtor's petition as her residence. Although Debtor claims there was "address swapping" on the certificates of service for the notice of hearing on the motion for summary judgment and the notice of order granting summary judgment and judgment of foreclosure and sale (the "Notice of Judgment"), the state court's record reflects that Debtor was served at the 1041 Green Haven Drive address for each notice sent. The Notice of Judgment indicates that Debtor was served

appear to have been a clear error of law for this Court to conclude that it lacks jurisdiction under the *Rooker-Feldman* doctrine to review the state court's foreclosure judgment.

*Evidentiary Contradictions & Sworn Testimony Conflicts*

Debtor further asserts that the hearing on the Emergency Motion to Vacate was "infected by severe evidentiary and sworn conflicts." Specifically, Debtor claims that (1) she was instructed by her counsel to pay $499.00 per month, which her counsel denied; (2) the Chapter 13 Trustee and her staff attorney received a May 15, 2026 email but her staff attorney remained silent regarding this email, "allowing the Court to characterize the payment variance as a personal, voluntary default by the Debtor"; and (3) Debtor's Counsel misdirected a confidential email on March 20, 2026 to Debtor intended for another client containing sensitive information that directly resulted in counsel filing "profoundly defective and contradictory Schedules (Doc 10) and Plan (Doc 11)."

The Court went to great lengths in the Order Denying Motion to Vacate to consider all the evidence presented including the facts above, and concluded that there was no clear error of law or manifest injustice warranting relief from the Order Dismissing Case under Fed. R. Civ. P. 59(e) or meritorious defense to the dismissal of Debtor's case based upon her failure to file an amended plan warranting relief from judgment under Fed. R. Civ. P. 60(b). Debtor's failure to make full plan payments was not considered as grounds for entry of the Order Dismissing Case; rather, it was her failure to file an amended plan that caused the dismissal of her case.

*Vanderbilt's Inflated Claim*

Debtor further asserts that Vanderbilt's proof of claim in her bankruptcy case was inflated because, among other reasons, it waived its right to a deficiency judgment and therefore the state

---

at *both* the 1035 Green Haven Drive and 1041 Green Haven Drive addresses on January 13, 2026. Case No. 2025CP3201229, Certificate of Service, filed Jan. 13, 2026.

court judgment amount was an absolute cap on Vanderbilt's recovery. Debtor appears to misunderstand the legal effect of a deficiency judgment waiver, which contemplates a foreclosure sale taking place. Under South Carolina law, "[i]n actions to foreclose mortgages, the court may adjudge and direct the payment by the mortgagor of any residue of the mortgage debt that may remain unsatisfied *after a sale of the mortgaged premises* . . . ." S.C. Code Ann. § 29-3-660; *see also Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019) ("[I]n the event that the foreclosure sale does not yield the full amount due, a creditor pursuing a judicial foreclosure may sometimes obtain a deficiency judgment, that is, a judgment against the homeowner for the unpaid balance of a debt."). If the deficiency judgment is waived, and the property sells for less than what is owed, the creditor cannot hold the homeowner liable for the balance due. *See Obduskey,* 586 U.S. at 471. If the property sells for more than what is owed, there is no deficiency and the creditor will receive the full amount of its debt, with the homeowner receiving any remaining funds from the sale. Since no foreclosure sale has occurred, no deficiency can be determined. Moreover, the state court's Judgment of Foreclosure and Sale provided that the "Total Debt" and "later accrued interest and costs" shall constitute the total judgment debt due to Vanderbilt and that "the judgment amount shall be subject to increase to permit [Vanderbilt] to recover additional costs, commission and expenses. . . ."[24]

Debtor again raises escrow and title errors by Vanderbilt which she claims caused her default and resulted in the "physical and legal destruction of the collateral." This Court previously determined that these issues were raised in the state court action and the state court determined that the foreclosure of the mortgage and sale of the Property was nevertheless warranted under state law, and this Court could not review the state court's judgment under the *Rooker-Feldman*

---

[24] Case No. 2025CP3201229, Order Granting Plaintiff's Motion for Summary Judgment, Judgment of Foreclosure & Sale, filed Jan. 9, 2026.

doctrine.[25] Moreover, based on the record before it, the Court similarly concluded it was not going to second guess Debtor's Counsel's determination that there was no basis to object to Vanderbilt's claim.

Debtor claims that the Court committed a clear, reversible error of law by "reclassifying Debtor's motion to vacate under Rule 59(e) rather than Rule 60(b) to strip her of the 'excusable neglect' and 'third-party misconduct' standards." The Court, however, considered both standards and determined that relief was not warranted under either Rule.

Accordingly, none of the arguments raised by Debtor demonstrate that she has a likelihood of success on the merits.

*2. Risk of Irreparable Injury Absent Stay*

Debtor asserts that her home is at risk of immediate foreclosure auction under Lexington County Case No. 2025-CP-32-01229. The state court record does not reflect that a foreclosure sale has been scheduled. Moreover, Debtor retains her state law rights to contest the foreclosure action. *See In re Schweiger*, 578 B.R. 734, 738 (Bankr. D. Md. 2017) (concluding that there would be no irreparable injury if foreclosure proceedings were allowed to continue because the debtor retained his state law rights to contest the foreclosure sale). Debtor must show more than a mere possibility of irreparable injury and such injury must be more than monetary loss. *Id.* at 100 (citing cases). This Court has previously observed that "if the potential for property loss due to the automatic stay no longer being into place upon the dismissal of a case is sufficient to meet the burden for a stay pending appeal, debtors would be incentivized to file appeals for cases that do not comply with the requirements imposed by the Bankruptcy Code and rules . . . to delay creditors from acting on their rights while the appeal is pending." *Addison,* 667 B.R. at 101. Lastly,

[25] ECF No. 55, at 22.

Debtor's case was not dismissed with prejudice. Accordingly, Debtor has failed to make a sufficient showing of a risk of irreparable injury absent a stay.

*3. Likelihood of Substantial Injury to Other Parties Upon Issuance of Stay*

Debtor posits that granting a stay pending appeal would cause no economic harm to Vanderbilt because its collateral is unmarketable and functionally uninhabitable due to the title issues. This argument is not convincing. There is no evidence indicating that Debtor had been making mortgage payments to Vanderbilt either before the bankruptcy filing or since the dismissal of the case. Due to the dismissal of the bankruptcy case, the automatic stay is no longer in effect, and Vanderbilt is not prohibited by the stay from pursuing further efforts to collect its debt. If the Court granted the stay pending appeal, the stay would be reimposed, which would force Vanderbilt and Debtor's other creditors to cease any actions commenced after the dismissal of the bankruptcy case and further delay recovery of their debts. *See id.* at 101. Debtor's vehicle creditor, Exeter Finance LLC, repossessed her vehicle *after* the dismissal of the bankruptcy case. Reimposing the stay would not undo a lawful repossession during a period when the automatic stay was not in effect. *Singleton v. Countrywide Home Loans, Inc. (In re Singleton)*, 358 B.R. 253, 261 (D.S.C. 2006); *Holloway v. Valley Auto Sales (In re Holloway)*, 565 B.R. 435, 438 (Bankr. M.D. Ala. 2017). Thus, Debtor has not met her burden of demonstrating that a stay pending appeal would not substantially injure the other parties interested in the proceeding.

*4. Public Interest*

Debtor's argument that a stay would serve the public interest is similarly unavailing. She claims that allowing the foreclosure action to proceed in state court "while a retained law firm is under an active, formal investigation by the U.S. Trustee for conflicting fee disclosures, file commingling, and severe fiduciary breaches" is "contrary to the integrity of the federal judiciary."

She further references confidential reasons why the imposition of a stay pending appeal would serve the public interest, which have been redacted from public view. The Court has considered those confidential claims prior to entering the Order Denying Motion to Vacate and they do not persuade the Court to find that a stay pending appeal is warranted.

As to Debtor's allegations of breach of fiduciary duty by her counsel, as previously ordered, the Court has retained jurisdiction of this case to allow the U.S. Trustee to review the matter and request relief if necessary. A stay pending appeal is unnecessary for this investigation to continue.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED**:

1. the Debtor's Emergency Motion for Stay Pending Appeal is **DENIED**; and
2. the Clerk's Office shall serve or direct service of a copy of this Order on the Debtor, Debtor's Counsel, the Chapter 13 Trustee, and the United States Trustee.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**08/20/2026**

Entered: 08/20/2026

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina